## In re DRUGCRAFT CO.

## In re ANN ARBOR SAV. BANK.

(District Court, E. D. Michigan, S. D. March 24, 1923.)

### No. 5114.

1. Corporations ⟬⟭592—"Neglect or refusal" to file report under statutory penalty of suspension not shown by mere failure to report, as where report is not accepted and returned for correction.

Under Comp. Laws Mich. 1915, § 9028, requiring corporations to file annual report, under penalty of suspension of corporate powers in case the corporation "neglect" or "refuse" to file such report, such neglect is not shown by mere failure to make report, as where the report made is not accepted by the secretary of state, but returned for correction, and a subsequent report is also submitted and returned for correction, and such failure is due to mere lack of necessary knowledge as to the details required for a legally sufficient and proper report.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Neglect and Refusal.]

2. Bankruptcy ⟬⟭303(1)—Burden of proof on trustee to show neglect to file annual report, invalidating bankrupt corporation's mortgage.

Where bankruptcy trustee attacks mortgage of creditor of bankrupt corporation on the ground that the mortgage was executed by the bankrupt at a time when its corporate powers were suspended under Comp. Laws Mich. 1915, § 9028, for neglect or refusal to file annual report, the burden of proving such neglect or refusal is on the trustee, which burden is not sustained where the record shows two successive reports submitted by the corporation and returned for correction by the secretary of state, and the record suggests an inference that the failure to file annual report was due to mere lack of necessary knowledge of necessary details required for a legally sufficient report.

In Bankruptcy. In the matter of the Drugcraft Company, bankrupt. On petition of the Ann Arbor Savings Bank, a creditor, to review order of referee denying its petition for reclamation. Order reversed.

Johnston & McKee, of Detroit, Mich., for petitioner.
Harold Goodman, of Detroit, Mich., for trustee in bankruptcy.

TUTTLE, District Judge. This is a petition by the above-named creditor of the bankrupt to review an order of one of the referees in bankruptcy denying a petition of said creditor for reclamation; such order being based upon the ground that the chattel mortgage under which such reclamation is sought is invalid, because at the time of

its execution by the bankrupt corporation its corporate powers were suspended. The same order granted a petition of the trustee in bankruptcy praying that said mortgage be declared invalid, and that the property covered thereby be subjected to sale by the said trustee free from the lien so claimed.

The material provisions of the order in question are as follows:

"It appearing from the evidence in the cause that the Drugcraft Company, bankrupt, was a Michigan corporation, and had neglected and refused to make and file the annual report as required by law, and was more than ten days in default in the filing of the annual report at the time when the mortgage to the Ann Arbor Savings Bank was made, and that at such time its corporate powers were suspended, * * * it is ordered that the mortgage of the Drugcraft Company, bankrupt, to the Ann Arbor Savings Bank, be and the same is hereby declared invalid and of no effect, and that the petition of the Ann Arbor Savings Bank for reclamation of the property covered thereby be and the same is hereby denied. It is further ordered that the property covered by said mortgage be subjected to sale by the trustee, as prayed in his petition."

The certificate of the referee on the petition for review contains no findings of fact nor conclusions of law other than as referred to in the following statements in said certificate:

"A summary of the evidence on which such order was based is shown by the stipulated facts entered into by the attorneys for the respective parties, attached hereto and marked Exhibit C.

"This order is based upon the facts established and conceded that the corporate powers of the Drugcraft Company were suspended by reason of its failure to file an annual report for the year 1919. Such suspension of corporate powers continued from March 10, 1920, and was in effect at the time when the mortgage in question was given."

The stipulation of facts just mentioned is in full as follows:

"Some time in the spring of 1920, the Drugcraft Company forwarded an annual report for the year 1919, together with the proper fees, to the secretary of the state of Michigan. This report was not accepted by the secretary of state, and was returned for correction.

"Subsequently another annual report was submitted to the secretary of state by the Drugcraft Company, which also was not accepted by the secretary of state, and was returned to the Drugcraft Company for correction on November 3, 1920.

"On the 26th day of October, 1920, a bona fide chattel mortgage was executed by the officers of the Drugcraft Company to the Ann Arbor Savings Bank, which said mortgage was properly recorded on the 27th day of October, 1920. A copy of this mortgage is attached to the petition for reclamation filed by the Ann Arbor Savings Bank.

"A petition was filed against the Drugcraft Company on or about the 12th day of December, 1920.

"It is agreed that no sufficient annual report was submitted to the secretary of state by the Drugcraft Company for the year 1919."

It will be noted that neither in the certificate nor in the stipulation just quoted is it stated that the bankrupt at any time "neglected" or "refused" to make and file the required report in accordance with law. No transcript of the evidence, in whole or in part, nor any summary thereof, other than as may be supposed to be contained in the aforesaid certificate and stipulation, has been returned by the referee or is before this court.

[1] The applicable statutory provisions are found in section 9028 of the Michigan Compiled Laws of 1915, and are as follows:

"Every corporation subject to this act * * * shall annually, in the month of January or February, make duplicate reports showing the condition of such corporation on the thirty-first day of December next preceding on suitable blanks to be furnished by the secretary of state, as hereinafter provided. * * * Such reports shall be signed by a majority of the board of directors and verified by the oath of the secretary of the corporation, and deposited in the office of the secretary of state within the said month of January or February. * * * The secretary of state shall carefully examine such reports, and if upon such examination they shall be found to comply with all the requirements of this section, he shall then file one of them in his office, and shall forward the other by mail or express to the county clerk of the county in which the office in this state for the transaction of the business of said corporation, is situated. And it shall be the duty of such county clerk, upon receipt of such report, to immediately cause the same to be filed in his office. If any corporation neglect or refuse to make and file the report required by this section within the time herein specified, and shall continue in default for ten days thereafter, its corporate powers shall be suspended thereafter, until it shall file such report, and it shall not maintain an action in any court of this state upon any contract entered into during the time of such default; and any director of such corporations so in default, who has neglected or refused to join in the making of such report shall be liable for all the debts of such corporation contracted during the period of such neglect or refusal, and shall also be liable to such corporation for any damages sustained by it by reason of such refusal or neglect. * * * Whenever any corporation has neglected or refused to make and file its report within twenty days after the time limited in this section, the secretary of state shall cause notice of that fact to be given by mail to such corporation, directed to its post office address."

It will be observed that the prescribed penalties (suspension of corporate powers and disability to maintain actions on the part of the corporation, and liability for debts and damages on the part of directors) are not imposed upon either the corporation or the directors for a mere failure by either to make and file the requisite report. Only if a corporation "neglect or refuse" to make and file such report does it become subject to such penalties; just as only directors of such corporation who have "neglected or refused" to join in the making of such report become liable for the debts and damages mentioned. Ford River Lumber Co. v. Perron, 148 Mich. 399, 111 N. W. 1074; Macbeth-Evans Glass Co. v. Gumbinsky, 201 Mich. 18, 166 N. W. 936. Furthermore, as pointed out by the Michigan Supreme Court in the case last cited:

"This provision is manifestly highly penal in its nature, to be strictly construed and the penalty to be imposed only in those cases where the plain language of the provision requires it."

The essential difference between the nature of mere failure to do a certain act and the elements of neglect to so act is, of course, sufficiently clear.

General Order 27 (89 Fed. xi) provides that, upon the filing of a petition for a review by the court of an order of a referee, "the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon." It is assumed by this court that the recitals in the stipulation of facts referred to above are intended to constitute

"a summary of the evidence." The facts set forth in such stipulation fall far short of showing any neglect or refusal by the bankrupt to file or make, within the prescribed period of time, any reports required by law. Indeed, as already indicated, the stipulation in question recites that an annual report for 1919 was forwarded by the bankrupt corporation to the secretary of state (the proper state official) "in the spring of 1920," but that such report was "returned for correction," and that another report was "subsequently" submitted to said official and was returned for correction *after the date of the execution of the mortgage in controversy here.* It does not appear that the failure by the bankrupt to file such report prior to the execution of said mortgage was due to neglect on its part, and no refusal by the bankrupt is claimed by the trustee. On the other hand, the stated facts suggest an inference that such failure was due to a mere lack of the necessary knowledge as to the details required for a legally sufficient and proper report. If the latter were the true situation, there was, of course, failure, but not neglect nor refusal, within the meaning of the statute. Macbeth-Evans Glass Co. v. Gumbinsky,, supra.

The recitals in the order and certificate of the referee to the effect that there was evidence or concessions showing neglect and refusal are without any support in the record before this court.

The question, therefore, as to the right of the trustee of the bankrupt corporation to invoke the asserted invalidity of the mortgage on the ground that it was executed by the bankrupt while its corporate powers were suspended becomes an academic question and no opinion is expressed thereon.

[2] In view, then, of the lack of any evidence which would support a finding of neglect or refusal by the bankrupt corporation to file this report as provided by law, and bearing in mind that the burden of proof of this essential fact is upon the trustee as the party asserting it, the order must be reversed and set aside. The trustee should return the property in question. An order will be entered accordingly.